**Dissenting Opinion Filed October 17, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-24-00960-CV**

**IN RE AUTO CLUB COUNTY MUTUAL INSURANCE COMPANY AND MICHAEL MILLIGAN, Relators**

**Original Proceeding from the County Court at Law No. 1**
**Dallas County, Texas**
**Trial Court Cause No. CC-22-04838-A**

## DISSENTING OPINION
OPINION BY JUSTICE PEDERSEN, III

The majority denied the Relators' petition for writ of mandamus on two bases: an undue delay of such magnitude that the petition must be denied based on the equitable doctrine of laches, and what it alleges is a "failure to challenge all bases for the trial court's order."[1] I believe the majority is incorrect on both counts. I also

---

[1] *See In re Baker*, No. 05-17-01205-CV, 2017 WL 4928192, at *1 (Tex. App.—Dallas Oct. 31, 2017, orig. proceeding) (mem. op.) (denying mandamus petition because relators did not challenge every possible ground for trial judge's order).

1

believe that the trial court abused its discretion, and that Relators have no adequate remedy at law.[2] I respectfully dissent.

Facts

This lawsuit is based on an automobile accident and an insured's resulting underinsured-motorist claim. The Plaintiff/Real Party in Interest Sabrina Freeman (RPI) received the policy limits from the other driver's (Figueroa) GEICO insurance policy and thereafter received a settlement offer from her own insurance carrier (Defendants/Relators Auto Club County Mutual Insurance Company) that, in her view, violated Chapters 541 and 542 of the Texas Insurance Code. *See* TEX. INS. CODE ANN. chs. 541, 542. RPI sought relief under both statutes and sought relevant declarations pursuant to the Uniform Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 37.001–.011.

On September 20, 2023, Defendants/Relators (Relators) sent notice of intention to take the deposition by written questions of the RPI's insurer, GEICO, with a subpoena duces tecum related to a specified claim number, policy number, and date of loss.[3] RPI immediately moved to quash the notice of intention to take

---

[2] *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding) (party seeking mandamus relief must demonstrate the trial court clearly abused its discretion and that it has no adequate remedy by appeal).

[3] Specifically, the DWQ requests:

> Any and all records, documentation and tangible items including, but not limited to documents concerning the following: claims filed and/or received, any notice of claims, correspondence including, (produced in printed form) file notes, investigatory documents, estimates, medical records and/or bills for injuries, payments, reimbursement or negotiation of any medical expense,

deposition on written questions as overly broad, not limited in time, scope, and as a mere fishing expedition. The motion to quash further alleges Relators had no legitimate need for the records as requested.

The motion to quash was set to be heard on November 29, 2023, and following multiple resets by the trial court, was ultimately heard May 3, 2024. The majority notes that the reporter's record was not completed until May 22, 2004. Approximately two months and three weeks after completion of the reporter's record, Relators filed the petition for writ of mandamus denied by the majority.

<u>Laches</u>

Laches is an equitable concept designed to prevent parties from slumbering on their rights. Issuance of mandamus relief "is largely controlled by equitable principles," and equity "aids the diligent and not those who slumber on their rights." *In re Laibe Corp.*, 307 S.W.3d. 314, 317 (Tex. 2010) (orig. proceeding) (per curiam); *see also Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (quoting *Callahan v. Giles*, 137 Tex. 571, 576, 155 S.W.2d 793, 795 (1941)). To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting it rights, and also the moving party's good faith and detrimental change in position because of the

photographs, accident reports, statements and any and all lawsuit pertaining to claim NO. 0641267040101016, policy NO. 4562216129, date of loss 10/18/2018.

3

delay. *See In re Laibe*, 307 S.W.3d. at 308; *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 80 (Tex. 1989). RPI has not even attempted to demonstrate a detrimental change in position, nor identified any prejudice whatsoever, between the time the motion to quash was granted in the trial court and the filing of the mandamus petition in this court. *See In re E.I. du Pont de Nemours & Co.*, 92 S.W.3d 517, 524 (Tex. 2002) (orig. proceeding) (rejecting argument that unreasonable delay barred mandamus relief, in part because "plaintiffs have failed to show how the delay has prejudiced them in any way").

Relators filed their petition for writ of mandamus less than three months after the completion of the reporter's record. This does not strike me as an obviously inequitable delay, especially in light of RPI's failure to identify any prejudice. Laches should operate to prevent inequity. The majority sets a pretty tough bar for a prospective relator. I worry the majority is pushing this extraordinary relief out of reach of all but the most diligent, or perhaps well-resourced, litigants. Most importantly, however, I don't think the majority's application of laches is faithful to the supreme court's precedent.

### *In re Baker*

The second reason the majority gives to deny Relators' request for mandamus relief is failure to address all grounds for the trial court's ruling, citing *In re Baker*, No. 05-17-01205-CV, 2017 WL 4928192, at *1 (Tex. App.—Dallas Oct. 31, 2017,

orig. proceeding) (mem. op.) (denying mandamus petition because relators did not challenge every possible ground for trial judge's order). I believe the majority has again been harsh to the point of inaccuracy.

It is undisputed the notice of intent to take deposition on written questions was sent during the discovery period provided by an agreed scheduling order. Relators, in my view, in fact address the issue quite directly by noting repeatedly in their petition that the deposition on written questions (DWQ) was unquestionably timely pursuant to an agreed scheduling order. Perhaps the majority would like them to say more, but it seems unclear to me what more the majority wants. What other argument should they provide? What other response may be required?

The trial court questioned why Relators did not send the notice earlier in the discovery period. Neither the trial court, nor the real parties in interest, nor the majority, cite to any rule, statute, or relevant court decision for the proposition that a timely served discovery request risks becoming untimely unless it is sent "early" in the discovery period. This rule seems to be an invention of the trial court, and absent some policy or other justification, seems to me a difficult rule to understand, much less impose on Texas litigants.

## Delay in Setting the Motion to Quash

The other basis for the trial judge's order identified by the majority is the delay in setting the motion to quash for hearing. The record demonstrates that the delay in

5

setting the motion to quash for hearing was almost entirely due to the trial court's busy docket and repeated unilateral rescheduling of the hearing.

RPI filed a motion to quash and for a protective order as to the DWQ on September 20, 2023. A hearing on the motion to quash was first set by the trial court for November 29, 2023, and Relators properly provided RPI notice of the hearing. However, on November 28, 2023, the trial court unilaterally reset this hearing for December 8, 2023. The trial court unilaterally rescheduled the hearing yet again on December 6, 2023, until December 15, 2023. However, RPI had a scheduling conflict, and Relators agreed to accommodate RPI's request to reset the hearing for the trial court's first available date. Notwithstanding this agreement, the trial court informed the parties on December 12, 2023, that the hearing would be reset once a new date became available in 2024. However, a new hearing date was not immediately forthcoming from the trial court. Relators inquired about the status of a new hearing date with the trial court on December 27, 2023. After receiving no response, Relators again reached out to the trial court on January 10, 2024, as to when the hearing would be rescheduled. After once again not receiving a response, Relator contacted the trial court's clerk—previous communications had been through the trial court's court coordinator—and was informed that the next available hearing date was not until May of 2024, which was after the then-scheduled trial date of February 26, 2024. The motion to quash was ultimately reset for hearing on

6

May 3, 2024, with timely notice of same being given on January 23, 2024. I am confused as to how the delay of more than seven months between the RPI's September 20, 2023, motion to quash being filed and the ultimate hearing date of May 3, 2024 was somehow the Relators' fault. The majority doesn't address this issue.

<u>Why I Would Conditionally Grant the Writ</u>

Parties are generally entitled to the discovery of information that is not privileged and is relevant to the subject matter of the dispute. TEX. R. CIV. P. 192.3(a). The phrase "relevant to the subject matter" is to be liberally construed. *See In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding) (per curiam). Information or evidence is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. *See* TEX. R. EVID. 401.

Even evidence which would be inadmissible at trial is discoverable if it "appears reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a). However, the trial court must still consider the proportionality of the discovery and balance the broad right to relevant information against the needs of the specific case. *See In re Liberty Cnty. Mut. Ins. Co.*, 679 S.W.3d 170, 174 (Tex. 2023) (orig. proceeding) (per curiam). Comment seven to Rule 192 expressly states that a court "abuses its discretion in unreasonably

restricting a party's access to information through discovery." Tᴇx. R. Cɪᴠ. P. 192 cmt. 7.

The Texas Supreme Court has previously held, in a nearly identical underinsured-motorist dispute, that a request for medical records from five years before and after an accident was not overbroad. *See In re Liberty*, 679 S.W.3d at 175–76. The dispute in *In re Liberty* involved a motion to quash the defendant's DWQ to the plaintiff's medical provider, which the trial court granted *in toto*. *See id.* at 172–73. In overturning that order to quash, the Texas Supreme Court heavily weighted the trial court's failure to engage in a proportionality analysis, as it has previously required the trial court to engage in, and that the plaintiff presented no evidence to support its conclusory allegations that having to review the requested documents for relevance or privilege would be unduly burdensome. *See id.* at 175–76. Similarly, here, the trial court did not engage in a proportional analysis in quashing Relators' requested discovery. Indeed, it appears that the trial court *agreed* with Relators in that the request was narrowly tailored and relevant, as Relators limited their request to a specific policy number, claim number, and date of loss.[4]

---

[4] "THE COURT: But if you read on it says, claims filed and/or received and notice of claims correspondence including produced in written form, file notes, investigatory documents, estimates, medical records and/or bills for injuries, payments, reimbursement, or negotiation of any medical expenses, photographs, accident reports, statements and any and all lawsuits pertaining to claim number, and then it gives the claim number, policy number, and then the date of loss being October 18th, 2018. *So it does seem to limit it to the particular incident in question.*" (Emphasis added.)

8

The requested discovery is at least relevant to the subject matter of Relators' defense at trial. As the Texas Supreme Court has recognized, RPI's underinsured-motorist suit against Relators requires her to prove RPI's liability in causing the accident and the amount of damages she suffered. *See In re Liberty*, 679 S.W.3d at 174. It is tort law which determines whether underinsured-motorist insurance provides coverage for an accident, and only after an insured establishes the insurer's contractual obligation to pay benefits, is such underinsured-motorist coverage triggered. *In re USAA Gen. Indem. Co.*, 624 S.W.3d 782, 788–89 (Tex. 2021) (quoting *Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809, 818 (Tex. 2006)).

The RPI claims she is entitled to more than $600,000 in damages. The information possessed by GEICO concerning the accident, RPI's personal injury claims, and the policy issued to Figueroa are highly relevant to Relator and any defense it may present at trial. Since RPI must still establish Figueroa's liability as to the accident, prior to establishing any entitlement to underinsured-motorist benefits from Relator, any and all information GEICO utilized in evaluating and investigating RPI's claim is relevant to Relator's defense here.

I find it difficult to distinguish this case from *In re Liberty County Mutual Insurance Co.*, (Tex. 2023) (orig. proceeding) (per curiam). The deposition on written questions sought the GEICO claims file for the automobile accident that

forms the basis of the underlying lawsuit. It is difficult to imagine how a deposition for written questions could seek more relevant information.

<u>Conclusion</u>

The majority erred by denying relator's petition for writ of mandamus. I respectfully dissent.

240960df.p05

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE